UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

**ROGER LEE MINNIFIELD**                                                                 **PLAINTIFF**

v.                                                     **CIVIL ACTION NO. 3:07CV-P207-S**

**LARRY CHANDLER** *et al.*                                                 **DEFENDANTS**

### MEMORANDUM OPINION

Seeking money and punitive damages, Plaintiff Roger Lee Minnifield, a prisoner at the Kentucky State Reformatory ("KSR"), filed a *pro se* complaint pursuant to 42 U.S.C. § 1983. As Defendants, he names KSR Warden Larry Chandler and the following KSR officers in both their individual and official capacities: Officer Jason Heimann, Lt. David Dykes, Lt. Carlos Schartz, and Lt. Daniel King. Plaintiff alleges that Defendants violated the Eighth and Fourteenth Amendments to the U.S. Constitution. This matter is before the Court for *sua sponte* screening of the complaint pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). For the reasons that follow, the Court will dismiss all claims except for the Eighth Amendment claim arising out of an incident in February 2007 and involving Defendants Heimann, King, and Schartz.

### I. STANDARD OF REVIEW

When a prisoner initiates a civil action seeking redress from a governmental entity, officer or employee, the trial court must review the complaint and dismiss the action, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1), (2); *McGore*, 114 F.3d at 604. A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. In order to survive dismissal for

failure to state a claim, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, -- U.S. -- , 127 S. Ct. 1955, 1965 (2007) (internal citations omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, -- U.S. -- , 127 S. Ct. at 1964-65 (citations omitted; alteration in *Twombly*). In reviewing a complaint under this standard, the Court must construe the pleading in the light most favorable to Plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998).

Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), "[o]ur duty to be 'less stringent' with pro se complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted). And this Court is not required to create a claim for Plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. ANALYSIS

### A. Official capacity claims

The official capacity claims for damages will be dismissed on two bases. First, Defendants, as state officials and employees sued in their official capacities for damages, are absolutely immune

from § 1983 liability under the Eleventh Amendment to the United States Constitution. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("This [Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity."). Second, Defendants are not "persons" subject to suit within the meaning of § 1983 when sued in their official capacities for monetary damages. *Id.* (concluding that a state, its agencies, and its officials sued in their official capacities for monetary damages are not considered persons for the purpose of a § 1983 claim); *Matthews v. Jones,* 35 F.3d 1046, 1049 (6th Cir. 1994) (same). Consequently, the § 1983 official capacity claims for damages against all Defendants must be dismissed.

## B. Individual capacity claims

### 1. February 2007 incident

Plaintiff claims that while handcuffed at KSR on the morning of February 15, 2007, he was being questioned about an altercation with another inmate. After repeatedly being questioned, Plaintiff stood up and requested to go back to the segregation housing unit. Plaintiff then claims,

> [W]ithout cause or justifiable reason, I was grabbed and forcibly throwed to the floor, strapped tightly in a security restraint chair stripped of all my clothes, left in a chair from 9:00 am til 11:00 am by a door that led to an outdoor area with extremely cold air coming in on me, then I was placed in a maximum security cell with inadequate heating, without a mattress, placed in a paper gown put on a five minutes watch (Thurs. 2-15-07) til (Fri. 2-16-07) which then placed on fifteen minute watch until (Mon. 2-19-07), the morning of the disciplinary hearing, all because I stood up and requested to "let's go take me on back to the lock up area."

Upon consideration, the Court will allow this Eighth Amendment claim to proceed against Defendants Heimann, King, and Schartz, who are identified in attachments to the complaint as being involved in the incident. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994) ("[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and

must 'take reasonable measures to guarantee the safety of the inmates.'") (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)); *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (advising that "a low cell temperature at night combined with a failure to issue blankets" may establish an Eighth Amendment violation). As the record fails to demonstrate any wrongdoing on the part of Defendants Chandler and Dykes with respect to the February 2007 incident, the Court will dismiss that claim against those Defendants for failure to state a claim upon which relief may be granted.

### 2. Placement in segregation

#### A. Fourteenth Amendment

Plaintiff further alleges that as a result of the February 15th incident, he was charged with an institutional disciplinary report alleging that he was "combative and highly agitated and subdued and restrained due to aggressive manner." After having been found guilty of the disciplinary charge, Plaintiff was placed in disciplinary segregation ("the hole") for 180 days. He claims that he was "subjected to the undeserved punishment of being housed for 6 months, 24 hrs. a day (minus rec. time 5 days a week for one hour) and ten minute showers three days a week, in a small cell approx. 9 x 6 x 12." Plaintiff alleges that his constitutional rights were violated because "the defendants named, all collaborated by implying that the incident report was correct as written, violating my constitutional rights by falsifying the claims of the report."

In *Sandin v. Connor*, 515 U.S. 472 (1995), the Supreme Court significantly restricted prisoners' § 1983 claims for relief based on issues concerning due process. The Court made a marked departure from its earlier decisions concerning recognized liberty interests, and limited due process liberty interests created by prison regulations "to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the

4

inmate in relation to the ordinary incidents of prison life." *Id*. at 484 (citations omitted). Noting that punishment of incarcerated prisoners is aimed at effectuating prison management and prisoner rehabilitative goals, the Court found that "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Id.* at 485.

The prisoner plaintiff in *Sandin* was found guilty of a disciplinary charge and sentenced to 30 days disciplinary segregation. The Court concluded:

> Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest. The record shows that, at the time of Conner's punishment, disciplinary segregation, with insignificant exceptions, mirrored those conditions imposed upon inmates in administrative segregation and protective custody. We note also that the State expunged Conner's disciplinary record with respect to the "high misconduct" charge nine months after Conner served time in segregation. Thus, *Conner's confinement did not exceed similar, but totally discretionary, confinement in either duration or degree of restriction.* Indeed, the conditions at Halawa involve significant amounts of "lockdown time" even for inmates in the general population. Based on a comparison between inmates inside and outside disciplinary segregation, the State's actions in placing him there for 30 days did not work a major disruption in his environment.

*Sandin*, 515 U.S. at 486 (emphasis added).

Although the *Sandin* Court found no liberty interest in the 30-day placement in segregation, more recently, in *Wilkinson v. Austin*, 545 U.S. 209 (2005), the Supreme Court found that Ohio prisoners possess a liberty interest in avoiding assignment to Ohio State Penitentiary ("OSP"), the state's only Supermax facility,[1] as the totality of the conditions at OSP "imposes an atypical and significant hardship under any plausible baseline." *Id.* at 223. The Court reasoned,

---

[1]"Supermax facilities are maximum-security prisons with highly restrictive conditions, designed to segregate the most dangerous prisoners from the general prison population." *Wilkinson*, 545 U.S. at 213.

5

> For an inmate placed in OSP, almost all human contact is prohibited, even to the point that conversation is not permitted from cell to cell; the light, though it may be dimmed, is on for 24 hours; exercise is for 1 hour per day, but only in a small indoor room.  Save perhaps for the especially severe limitations on all human contact, these conditions likely would apply to most solitary confinement facilities, but here there are two added components. First is the duration. Unlike the 30-day placement in *Sandin*, placement at OSP is indefinite and, after an initial 30-day review, is reviewed just annually.  Second is that placement disqualifies an otherwise eligible inmate for parole consideration.  *Austin I*, 189 F. Supp. 2d, at 728.  While any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context.  It follows that respondents have a liberty interest in avoiding assignment to OSP.  *Sandin*, *supra*, at 483, 115 S. Ct. 2293.

*Wilkinson*, 545 U.S. at 223-24.

In the instant case, Plaintiff alleges only that he was "subjected to the undeserved punishment of being housed for 6 months, 24 hrs. a day (minus rec. time 5 days a week for one hour) and ten minute showers three days a week, in a small cell approx. 9 x 6 x 12."  Unlike the prisoners in *Wilkinson*, Plaintiff's placement in segregation was for a specific duration of only six months, and he fails to allege that such placement disqualified him from parole consideration or otherwise affected the duration of his sentence.  *See Sandin*, 515 U.S. at 487 ("Nor does Conner's situation present a case where the State's action will inevitably affect the duration of his sentence.").  While prisoners do not shed all constitutional rights at the prison gate, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system."  *Sandin*, 515 U.S. at 485 (citations omitted).  Accordingly, the Court finds that Plaintiff's placement in disciplinary segregation was not an atypical and significant hardship.  As such, Plaintiff has failed to demonstrate the deprivation of a liberty interest that would entitle him to the procedural due process protections set forth in *Wolff v. McDonnell,* 418 U.S. 539 (1974).

6

### B. <u>Eighth Amendment</u>

In its purest sense, the Eighth Amendment prohibits cruel and unusual punishment meted in a penal or disciplinary sense. *See, e.g., Harmelin v. Michigan*, 501 U.S. 957, 994-96 (1991) (plurality). However, the Eighth Amendment has actually been applied to protect a wide assortment of interests, including the physical conditions of confinement. *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). The alleged conduct must reflect an "unnecessary and wanton infliction of pain" to fall within the ambit of conduct proscribed by the Eighth Amendment. *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (citations and internal quotation marks omitted).

A viable Eighth Amendment claim must satisfy an objective and subjective component. *Farmer*, 511 U.S. at 834-38. The objective component requires that the deprivation be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. at 298; *see also Hudson v. McMillian*, 503 U.S. 1 (1992). This component is contextually driven and is responsive to "contemporary standards of decency." *Hudson*, 503 U.S. at 8 (citation omitted). An inmate must show that he was deprived of "the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347. The subjective component requires the defendant to act with "deliberate indifference" to a prisoner's health or safety. *Wilson*, 501 U.S. at 302-03.

The Court finds that Plaintiff has failed to demonstrate the objective component of the Eighth Amendment. Plaintiff alleges that he was "subjected to the undeserved punishment of being housed for 6 months, 24 hrs. a day (minus rec. time 5 days a week for one hour) and ten minute showers three days a week, in a small cell approx. 9 x 6 x 12." These facts fail to demonstrate that he was deprived of "the minimal civilized measure of life's necessities." He has not alleged that he was denied basic human needs, such as water, food, shelter, medical treatment or personal safety. And "[p]lacement in segregation is 'routine discomfort' that is 'part of the penalty that criminal

offenders pay for their offenses against society.'" *Pearce v. Sapp*, No. 97-6373, 1999 WL 503568, at *4 (6th Cir. July 9, 1999) (quoting *Hudson*, 503 U.S. at 9).  As Plaintiff's placement in segregation did not constitute a "sufficiently serious" deprivation rising to the level of an Eighth Amendment violation, that claim must be dismissed.

The Court will enter a separate order dismissing all official capacity claims, the Eighth Amendment claim stemming from the February 2007 incident against Defendants Chandler and Dykes, and the Fourteenth and Eighth Amendment claims stemming from his placement in segregation against all Defendants.  The Court will enter a separate scheduling order governing the development of the remaining Eighth Amendment claim.

Date:

cc:      Plaintiff, *pro se*
         General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4411.005